Brandi L. Harper, SBN 264672
Brandi@gcwhlaw.com
GASPARD CASTILLO WINTER HARPER APC
3333 Concours Street, Suite 4100
Ontario, CA 91764
Telephone: (909) 466-5600
Facsimile:  (909) 466-5610

Attorneys for Plaintiff
MANUEL CAMPOS

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANUEL CAMPOS,<br><br>                    Plaintiff,<br><br>          vs.<br><br>CITY OF IRWINDALE, a municipal corporation; IRWINDALE POLICE DEPARTMENT;GEORGE ZENDEJAS, individually and as Sergeant for the Irwindale Police Department; and DOES 1 THROUGH 40 INCLUSIVE<br><br>                    Defendants. | Case No.<br><br>UNLIMITED JURISDICTION<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR VIOLATION OF INDIVIDUAL CIVIL RIGHTS AND LIBERTIES [42 U.S.C. § 1983]; VIOLATION OF PEACE OFFICERS BILL OF RIGHTS [Cal. Govt. Code §3303 et. seq.]; and VIOLATION OF RIGHT TO PRIVACY UNDER THE CALIFORNIA CONSTITUION [Article I]**<br><br>**JURY TRIAL DEMANDED** |

## I.

## PREFATORY

1.     This is a complaint for damages for violations of Plaintiff's constitutional rights to be free from unreasonable searches and seizures under the

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR MANUEL CAMPOS**

Fourth and Fourteenth Amendments to the United States Constitution, and for violations of Plaintiff's rights pursuant to the Peace Officer Bill of Rights. Additionally, through this Complaint, Plaintiff seeks redress for violations of his right to privacy as the same is guaranteed under Article I of the California Constitution. Plaintiff, a police officer employed by the City of Irwindale, was under color of state law required to turn over his personal, private property to his superiors, who since held that personal property for an unreasonable amount of time. Also under threat of insubordination, termination, and criminal prosecution, and under color of state law, Plaintiff was detained for an unreasonable amount of time, during which time he was denied access to a union representative and/or an attorney, as well as denied the ability to leave the room or allowed to use the restroom unaccompanied. Additionally, Plaintiff was forced to suffer the indignity of having to urinate in a cup in front of his supervisors. These actions constitute gross violations of clearly established federal and state constitutional rights. As such, Plaintiff has brought suit under 42 U.S.C. Section 1983 and the California Constitution, seeking to remedy such violations. Furthermore, Plaintiff was denied his rights under the Police Officer Bill of Rights, Govt. Code §3303 et. seq. ("POBR").

## II.

## JURISDICTION AND VENUE

2.     Plaintiff's action is authorized by 42 U.S.C. § 1983, which provides for redress for the deprivation under color of state law of rights secured by the Constitution and the laws of the United States. Jurisdiction is conferred on this Court by 28 U.S.C. § 1343(3), providing for jurisdiction in this Court of suits authorized by 42 U.S.C. § 1983 to redress the deprivation under color of state law of any right, privilege, or immunity secured by the Constitution of the United States, and by 28 U.S.C. § 1343(4), providing for the protection of civil rights.

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR MANUEL CAMPOS**

Federal supplemental jurisdiction over the state law claims is conferred by 28 U.S.C. §1367.  This Court has authority to provide declaratory and injunctive relief in this case pursuant to 28 U.S.C. §§2201 and 2202. Venue is proper in the Central District of California in that the wrongs alleged herein occurred within the County of Los Angeles, within the Central District.

## III.

## PARTIES

3.    Plaintiff MANUEL CAMPOS (hereinafter "CAMPOS") was at all relevant times employed in the City of Irwindale, County of Los Angeles, as a police officer with the Irwindale Police Department.

4.    This action arises out of events involving Plaintiff MANUEL CAMPOS and Defendants GEORGE ZENDEJAS, individually and as an employee of the City of Irwindale, the CITY OF IRWINDALE, the IRWINDALE POLICE DEPARTMENT and DOES 1-40.  MANUEL CAMPOS was employed by the CITY OF IRWINDALE, in the County of Los Angeles and therefore jurisdiction within this judicial district is proper.

5.    Defendant CITY OF IRWINDALE ("CITY") is a duly constituted municipal corporation operating under the laws of the State of California, wholly situated in the County of Los Angeles.

6.    The Irwindale Police Department ("the DEPARTMENT") is an operating department of the City.

7.    Defendant GEORGE ZENDEJAS ("ZENDEJAS") is currently a Sergeant for the DEPARTMENT. During all times relevant to this complaint ZENDEJAS was a Sergeant with the DEPARTMENT and was at all times employed by the CITY.

8.    Defendant DOES 1 THROUGH 40 are not known or identified at this time.  On information and belief, Plaintiff alleges that each Doe is in some manner

3

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR MANUEL CAMPOS**

responsible for the wrongs alleged herein, and that each such Defendant advised, encouraged, participated in, ratified, directed, or conspired to do, the wrongful acts alleged herein.  When the true names and capacities of said Defendants become known, Plaintiff will seek relief to amend this claim to show their true identities in place of their fictitious names as DOES 1 through 40.

9.     Defendants, and each of them, were the agents, employees and servants of every other Defendant.  Defendants acted in the course and scope of said agency, service and employment at all relevant times.

## IV.

## FACTS COMMON TO ALL COUNTS

10.    Plaintiff re-alleges each and every preceding paragraph as though set forth in full here.

11.    Plaintiff CAMPOS was at all times relevant hereto employed by Defendant CITY as a police officer with the DEPARTMENT.

12.    At all times relevant hereto, Defendant ZENDEJAS was employed by Defendant CITY as a Sergeant with the DEPARTMENT and was either the direct supervisor or employed in a supervisory capacity over Plaintiff.

13.    In or about July 2006, CAMPOS began working as a police officer for the DEPARTMENT. During his tenure as an Irwindale police officer, CAMPOS performed his duties competently and without difficulty. During this time, Campos received numerous commendations.

14.    On or about Saturday August 17, 2013 CAMPOS was on routine patrol in a marked Irwindale Police vehicle and in full department approved uniform.  During briefing, CAMPOS asked Sergeant Gatto, CAMPOS's patrol supervisor, if he could drive over to a local hospital, located in the City of Covina, to visit a family member.  CAMPOS told Sergeant Gatto that he would still be available for patrol assistance, and routine calls for service.  Sergeant Gatto had

4

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR MANUEL CAMPOS

given him permission to leave the city in uniform and in a city owned patrol vehicle.

15.     During the first couple of hours of CAMPOS's overtime patrol shift, Officer Rudy Campos notified CAMPOS in person about a female caller who claimed that he was alleged to have been engaged in criminal conduct against her. Officer Rudy Campos told him the female had called the police station on a recorded telephone line, and claimed that CAMPOS had taken her female companions to a local Covina bar in a marked police vehicle after meeting them at a Covina pizzeria.  The female caller claimed that CAMPOS had consumed an alcoholic beverage while in uniform and while on duty in her presence.  She claimed that he accompanied her back to her residence and allowed her to give him a lap dance.  She further claimed that they had both taken off their clothing and engaged in some sort of sexual misconduct while on duty.  Even though the caller did not initially know CAMPOS's name, she claimed she was in possession of some of his property.  She tried to get Officer Rudy Campos to provide her with CAMPOS's name based on a physical description and by the assigned patrol unit number she had believed to have seen so she could return the property she claimed to possess.  Officer Rudy Campos believed that the female caller was mistaken and possibly calling the wrong police department to make her allegations as the unit number she identified was not an Irwindale Police Department Unit Number.

16.     Officer Rudy Campos notified the on-duty watch commander, Sergeant Rudy Gatto, of the allegations made by the caller.  Officer Rudy Campos provided CAMPOS with advice from his experience as a union member and union board member regarding CAMPOS's rights to legal representation based on what he was told by the caller.

17.     Once Sergeant Gatto arrived in the communications center, Officer Rudy Campos played both telephone conversations for Sergeant Gatto.  Still not

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR MANUEL CAMPOS**

knowing exactly who the female caller was talking about because she did not know the officer's name, it was believed the caller was describing CAMPOS based on his physical appearance and based on the fact that he was actually at the 3.99 pizza parlor in the City of Covina.  As Sergeant Gatto listened to the recorded audio of the female's allegations, he looked directly at CAMPOS and asked, "Is she talking about you?"  Knowing that he was actually at the 3.99 pizza parlor and that the physical description she had given resembled him, CAMPOS believed she was trying to make false allegations against him.  CAMPOS told Sergeant Gatto, "Yes. But she is lying."

18.    The female caller eventually arrived in person to speak with Sergeant Gatto.  Very quickly after the citizen's false allegations were made, it was revealed and determined that the female citizen was known by several local police departments and by city officials as a person who purposely fabricated and falsified incidents.  It appears that she has purposely targeted local police officers and police departments to victimize.  Her motives and actions had been documented and were sent to the Irwindale Police Department on an "Officer Safety Bulletin," which the department had received several days before.

19.    During Sergeant Gatto's contact with her in the police station lobby, Sergeant Gatto had activated his department issued recording device to capture all of her statements and allegations against CAMPOS.  Despite the allegations being false and fabricated, Sergeant Gatto initially appeared to have taken the necessary steps to safeguard CAMPOS's POBR rights.

20.    After CAMPOS told Sergeant Gatto that his entire patrol shift (from the beginning) was monitored through the department issued Watch Guard patrol cameras, which are cameras affixed to patrol vehicles that record the officers' actions, Gatto took CAMPOS's patrol unit out of patrol service so he could

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR MANUEL CAMPOS**

retrieve the video surveillance from the patrol unit for later review.  The patrol unit's camera is continually recording while the patrol unit ignition is on.

21.     It was apparent that Sergeant Gatto had called and notified Detective Sergeant George ZENDEJAS of the allegations being made against CAMPOS by the female citizen.  ZENDEJAS was not his patrol supervisor this evening. ZENDEJAS had been assigned on overtime to work at the Irwindale Event Center – Speedway for the scheduled NASCAR races.

22.     While in the north parking lot of the Irwindale Police Department, ZENDEJAS arrived from the speedway and contacted CAMPOS.  He asked if CAMPOS knew the seriousness of the alleged allegations by the female citizen. Based on this statement, it was obvious that ZENDEJAS had already been informed and had possibly already formulated an opinion about CAMPOS's liability.  ZENDEJAS continued and told CAMPOS he needed CAMPOS to understand the issues he was having at the moment.  He told CAMPOS he did not know what was going to happen as the result of the allegations that were made against CAMPOS.  ZENDEJAS then ordered CAMPOS to stay at the police station as he would try to figure out what was going to occur next.

23.     As CAMPOS remained at the station, he was dispatched to an emergency call for service of a suicidal subject at the Big Dalton Bridge and Irwindale Avenue, in the CITY.  Since CAMPOS was the closest patrol officer, he immediately responded to the scene from the police station.  When CAMPOS arrived on scene, he detained a male subject who was apparently trying to commit suicide by jumping into the wash.  This was according to the witnesses at scene and the original caller who reported the incident.

24.     While at the scene detaining the male subject, ZENDEJAS arrived on scene approximately 2 minutes later.  He approached CAMPOS and said that he could not be responding to calls for service.  ZENDEJAS ordered CAMPOS to

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR MANUEL CAMPOS**

return back to the police station, where he wanted him to remain until further notice.  Not wanting to be insubordinate, CAMPOS immediately responded back to the station and remained there.  When ZENDEJAS returned to the police station, he saw CAMPOS walking toward the police department report writing room.  ZENDEJAS stopped CAMPOS and ordered him to go and sit in the Emergency Operations Center (also known as the EOC).  At this point, Sergeant Gatto was directed to sit with CAMPOS in the EOC and closely watch him.

25.     Based on the closed entry door to the EOC and Sergeant Gatto posted as a watch guard of CAMPOS's actions, it was apparent CAMPOS was not allowed to leave the room if he wanted to.  During CAMPOS's time detained in the EOC, the door remained closed and nobody other than ZENDEJAS or Sergeant Gatto was allowed to come in or leave.  After a period of time, CAMPOS started to become concerned with the entire situation, especially since he was not told why he had to remain in the room and/or why he could not leave.

26.     On this particular day, CAMPOS was drinking a heavy volume of water as his uric acid level was high.  After sitting inside the EOC for about 15 or 20 minutes, CAMPOS stood up to use the restroom.  As CAMPOS stood up, Sergeant Gatto told him, "Hold on."  Sergeant Gatto told CAMPOS he would first have to contact ZENDEJAS before he could be allowed to use the restroom.  Based on the allegations and the way he was being treated by ZENDEJAS and Sergeant Gatto, CAMPOS felt he needed to have a union representative or attorney present with him, as he believed he may be facing adverse employment actions and or criminal prosecution.

27.     Knowing that Officer Rudy Campos, the President of the Irwindale Police Officer's Association was present in the police station, CAMPOS walked over to the department telephone in the EOC and called dispatch on the recorded line.  Officer Rudy Campos answered the telephone.  As he answered, CAMPOS

8

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR MANUEL CAMPOS**

told him he needed an attorney and a representative with him now. Despite this request, ZENDEJAS denied CAMPOS any representation. At this point, CAMPOS was still refused the right to use the restroom. Sergeant Gatto told CAMPOS to remain in the EOC as he walked out and left CAMPOS in there alone.

28.    After about 10 minutes, ZENDEJAS and Sergeant Gatto returned to the EOC together. ZENDEJAS was holding an evidence container used to hold urine. ZENDEJAS ordered CAMPOS to give him a urine sample and to place it into the urine evidence container. CAMPOS told ZENDEJAS he wanted an attorney present. ZENDEJAS paused for a few seconds and told CAMPOS that he would tell him when he would need an attorney. ZENDEJAS told CAMPOS he was not asking him any questions, so he could not have an attorney present. CAMPOS asked ZENDEJAS why he need a urine sample. ZENDEJAS responded, "I want to make sure you were not drinking earlier tonight." ZENDEJAS told CAMPOS he was being investigated and needed to comply.

29.    Sergeant Gatto escorted CAMPOS to the men's restroom where he witnessed CAMPOS provide a urine sample into the evidence container. After filling up the urine evidence container, CAMPOS handed it to Sergeant Gatto. CAMPOS told Sergeant Gatto that he could not believe how ZENDEJAS was treating him and how he could purposely violate his POBR rights. Sergeant Gatto told CAMPOS, "I know Manny, but right now is not the time to fight it."

30.    ZENDEJAS and Sergeant Gatto escorted CAMPOS into the men's locker room. Upon entering the men's locker room, ZENDEJAS ordered him to open his department issued locker. Sergeant ZENDEJAS then ordered CAMPOS to give him the series of numbers to his personally owned combination lock that is used to secure his locker. While in the locker room, ZENDEJAS ordered CAMPOS to remove all of his clothing including his uniform, underwear, under

9

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR MANUEL CAMPOS**

shirt, socks, gun belt and its accessories.  ZENDEJAS confiscated his uniform from him without his permission or consent.

31.     As CAMPOS stood inside of the locker room completely naked, he was completely humiliated, embarrassed, and ashamed for the way he was being viewed and treated by ZENDEJAS and Sergeant Gatto.  Both of the Sergeants stood there watching CAMPOS as he disrobed and was ordered to place his personal property into department evidence bags, which he did not consent to.

32.     Defendants also confiscated CAMPOSs personal phone and required CAMPOS to provide defendants with his personal code to unlock the phone.

33.     CAMPOS was ultimately placed on administrative leave and escorted from the police station at approximately 2:30 am on August 18, 2013.  All of the above incidents alleged occurred during a several hour period starting on the evening of August 17, 2013 and concluding on August 18, 2013.

34.     The allegations that were made against CAMPOS were ultimately unfounded however he did receive a written reprimand for being outside of the city, despite the fact that CAMPOS had received permission to be outside of the city.  CAMPOS's personal property was returned to him by defendants in evidence bags in front of other members of the police department which caused further embarrassment to CAMPOS.

## V.

## COUNT ONE

### 42 U.S.C. §1983 - (Against All Defendants)

35.     Plaintiff hereby incorporates each and every preceding paragraph as though it were set forth in full.

36.     Defendants' actions violated Plaintiffs constitutionally protected rights to be free from unreasonable searches and seizures.

10

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR MANUEL CAMPOS**

37.    Defendants' actions were unreasonable to the Plaintiff and the senses of ordinary persons. Defendants' conduct contravenes all boundaries of decency and standards of a civilized society. Defendants' actions constituted a meaningful interference with Plaintiffs possessory interest in his personal property including but not limited to, his clothing and personal cell phone. Further, Defendants' actions in confining Plaintiff under color of authority constituted a meaningful interference with Plaintiff's freedom of movement. Defendants' actions were therefore a seizure of property and of his person as understood by the Fourth and Fourteenth Amendments of the United States Constitution.

38.    By compelling Plaintiff to produce and relinquish his personal, private property under threat of insubordination and termination, without a search warrant, without probable cause, without consent, and otherwise without any lawful justification, and by keeping this property for several months with no apparent justification or effort to return, Defendants, and each of them, violated Plaintiff's Fourth and Fourteenth Amendment protections against unreasonable seizures of personal property, and are therefore liable to Plaintiff under 42 U.S.C. § 1983.

39.    By confining Plaintiff under color of state law for several hours in a locked and guarded room, without an arrest warrant, without probable cause, without consent, and otherwise without any lawful justification, Defendants, and each of them, violated Plaintiff's Fourth and Fourteenth Amendment protections against unreasonable seizures of his person, and are therefore liable to Plaintiff under 42 U.S.C. § 1983.

40.    The Defendants, in committing the acts complained of herein, acted pursuant to a policy, practice, and/or custom of the City. In addition, the Defendants, in committing the acts complained of herein, are official policy makers for the City in that their actions are not constrained by others and their actions represent actions by the municipality itself. At all times, the Defendants

11

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR
MANUEL CAMPOS**

were aware of their acts and omissions, specifically their failure to comply with statutory and constitutional procedural and substantive requirements, and consequently the violations of law that derived thereof.

41.     The Defendants acted despicably, with the intent to harm, oppress and deprive Plaintiff of his rights under the United States Constitution, entitling Plaintiff to punitive damages against the individual defendants in an amount to be proven at trial. At all times herein, the constitutional rights as described herein were clearly established.

42.     Plaintiff is entitled to an award of reasonable attorney fees as allowed by law, including, but not limited to, 42 U.S.C. § 1988.

## VI.

## COUNT TWO

### *Gov't Code § 3303(c)*

43.     Defendants' actions violated Plaintiffs constitutionally protected rights to be free from unreasonable searches and seizures.

44.     The Act, at Government Code §3303(c), requires that a "public safety officer under investigation shall be informed of the nature of the investigation prior to any interrogation."

45.     In the aforementioned incident, Plaintiff was not informed of the nature of the investigation prior to the interrogation and detention prior to being detained.

## VII.

## THIRD COUNT

### *Gov't Code § 3303(e)*

46.     Government Code  §3303(e) requires that "the public safety officer under interrogation shall not be subjected to offensive language or threatened with punitive action, except that an officer refusing to respond to questions or submit to

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR MANUEL CAMPOS**

interrogations shall be informed that failure to answer questions directly related to the investigation may result in punitive action."

47.    Plaintiff was subjected to demeaning language and activities including but not limited to being threatened with criminal prosecution, termination, and being denied the ability to use the restroom.

## VIII.

## FOURTH COUNT

### *Gov't Code § 3303(i)*

48.    Government Code  §3303(i) requires that "whenever an interrogation focuses on matters that are likely to result in punitive action against any public safety officer, that officer, at his or her request, shall have the right to be represented by a representative of his or her choice who may be present at all times during the interrogation."

49.    During the entirety of Plaintiff's detention, Plaintiff was denied both union representation and an attorney.

## IX.

## FIFTH COUNT

### *Gov't Code § 3303(h)*

50.    Government Code § 3303(h) requires that if "prior to or during the interrogation . . . it is determined that [the officer] may be charged with a criminal offense, he or she shall be immediately informed of his or her constitutional rights."

51.     Plaintiff's request for an attorney prior to being interrogated was denied even though he was under investigation and scrutiny for what could be a criminal sexual assault. Additionally, at no time was plaintiff advised of his constitutional rights.

///

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR
MANUEL CAMPOS

# X.

## SIXTH COUNT

### *Violation of the California Constitution- Right to Privacy (Article I)*

52.    Plaintiff hereby incorporates paragraphs 1-51 as though set forth in full here.

53.    Plaintiff maintained at all times relevant to this action, a specific, legally protected privacy interest. That interest is to be free from unwarranted intrusion into Plaintiff's life. Plaintiff has a reasonable expectation of privacy in keeping his body and his body fluids to himself without intrusion from his workplace. Plaintiff has a right to avoid disclosure of confidential personal information, including information from his own body/blood/urine/excretions, and to be free from invasions of said right.  Plaintiff's rights were violated when his supervisors demanded he urinate in a cup in their presence.

54.    Testing a person's bodily fluids is a significant and serious intrusion into one's private life.  DEFENDANT'S conduct in requiring PLAINTIFF to provide such fluids under the circumstances in the above described manner falls outside the bounds of decency and human dignity.

55.    Plaintiff has at all times relevant to this action conducted himself in a manner consistent with an actual expectation of said interests.

56.    The Defendants conduct, in doing everything they had been alleged to have done, constitutes an egregious breach of social norms underlying the said interests and is a serious invasion.

///
///
///
///
///

14
**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR MANUEL CAMPOS**

# PRAYER FOR RELIEF

**WHEREFORE**, PLAINTIFF prays for relief as follows:

57.     For general, compensatory, and special damages in amounts according to proof;

58.     For punitive damages in amounts according to proof against ZENDEJAS only;

59.     Injunctive relief ordering Defendants:

    a.   To immediately return CAMPOS to the position he would have been in had he not been subjected to the adverse employment actions

    b.   To expunge any negative personnel documents provided by Defendants relating to the adverse actions that are the subject of this action; and

    c.   To take any and all necessary and reasonable steps to remove the stigma and negative perception of CAMPOS;

60.     For attorneys' fees as provided by law;

61.     For prejudgment, post-judgment and other interest as provided by law;

62.     For cost of suit incurred herein; and

63.     For such other and further relief as the Court deems fair and just.

Dated: September 11, 2014            GASPARD CASTILLO WINTER HARPER APC

 

 

_____

Brandi L. Harper, Esq.
Attorneys for Plaintiff
MANUEL CAMPOS

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR MANUEL CAMPOS**

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.


Dated: September 11, 2014                          GASPARD CASTILLO WINTER HARPER APC

_____
Brandi L. Harper, Esq.
Attorneys for Plaintiff
MANUEL CAMPOS

16

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR
MANUEL CAMPOS**